# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| **ALLISON RENA S.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 22-1016-JWL** |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.     Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for DIB and SSI benefits on December 12, 2018.  (R. 15, 318, 320).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ failed properly to assess her mental impairments by failing to account for her worsening mental condition after the state agency psychological consultants reviewed the evidence and by failing to explain how the acknowledged mild mental limitations "in performing basic work activities affected [her] ability to perform her past relevant work at the semi-skilled level."  (Pl. Br. 8-9).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it." <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005); <u>see also</u>, <u>Bowling v. Shalala</u>, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in <u>Bowling</u>)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  <u>Williams</u>, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  <u>Id.</u>

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  <u>Blea v. Barnhart</u>, 466 F.3d 903, 907 (10th Cir. 2006); <u>accord</u>, <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.   Discussion

### A.   <u>Worsening Medical Condition</u>

Plaintiff first claims the ALJ failed to account for her worsening mental condition after the state agency psychological consultants reviewed the evidence.  Plaintiff argues, "The ALJ failed to provide reasons supported by substantial evidence for failing to include any mental limitations in the RFC."  (Pl. Br. 10).  Plaintiff noted the ALJ found

the state agency psychologists' opinions persuasive and argues the ALJ's mental RFC

assessment centered around that finding.  (Pl. Br. 10).  She argues, "'SSR 96-8p requires

the ALJ to explain how any material inconsistencies or ambiguities in the evidence were

considered and resolved' and to explain when an RFC conflicted with an opinion from a

medical source."  Id. (citing Soc. Sec. Ruling (SSR) 96-8p, and apparently quoting

without citation another attorney's argument quoted in Gaye Raynae A. v. Saul, Civ. A.

No. 20-2021-JWL, 2020 WL 6059731 at *2 (D. Kan., Oct. 14, 2020)).  Plaintiff notes

that the ALJ found the opinions[2] of the state agency psychological consultants

persuasive, and as did the consultants, found Plaintiff only mildly limited in each of the

four broad mental functional areas.  Id.  She argues it was error for the ALJ to rely on the

consultants' opinions because he did not address the opinions' inconsistency with

subsequent treatment records.  Id.  Plaintiff argues this court has held "it is sufficient to

rely on an outdated medical opinion so long as the ALJ addresses the subsequent medical

records and explains the consistency of the opinion with those records."  Id. 11 (citing

Nicholas P. S. v. Saul, Civ. A. No. 20-2360-JWL, 2021 WL 2711172, at *6 (D. Kan. July

1, 2021); Kenneth M. v. Kijakazi, Civ. A. No. 20-1307-JWL, 2021 WL 3710024, at *5

(D. Kan. Aug. 20, 2021)).  Plaintiff argues that the record in this case reveals a worsening

---

[2] The medical opinions of the psychological consultants are properly called "Prior
administrative medical findings," a term of art referring to the findings of state or federal
agency physicians or psychologists about a medical issue at an earlier level of review.  20
C.F.R. § 404.1513(a)(5).  Although the term is broader in scope than a a "medical
opinion," id. at § 404.1513(a)(2), the terms are often used interchangeably and the court
will follow that practice in this case except when necessary to draw a distinction.

of her condition after the psychological consultants opined as demonstrated in the opinions of her social worker, Ms. McLay, LSCSW, and nurse practitioner, Mr. Copeland, APRN.[3]  (Pl. Br. 11-12).  Plaintiff also argues her testimony conflicted with the psychological consultants' opinions and the ALJ failed to resolve the conflict between these medical opinions and her testimony and the opinions of the psychological consultants.  Id. 12.

The Commissioner argues the ALJ supported his findings Plaintiff's mental impairments did not significantly affect her ability to perform basic work activities and did not impose specific work-related limitations by relying on Plaintiff's routine course of mental health treatment, largely normal mental examination findings, and the state agency psychological consultants' medical opinions.  (Comm'r Br. 4).  She notes the ALJ found the opinions of Ms. McLay[4] and Mr. Copeland are not persuasive and argues the evidence does not support an appreciable worsening of Plaintiff's mental impairments after the psychological consultants reviewed the record.  Id. 5-6.  She argues, "Plaintiff's arguments to the contrary amount to a request that the Court [sic] look at the same evidence as the ALJ and come to a different conclusion, which is not the Court's [sic] duty on substantial evidence review."  Id. at 7 (citing Perales, 402 U.S. at 399; Lax v.

---

[3] Plaintiff refers to Mr. Copeland as "Dr. Copeland" (Pl. Br. 12), but the record reveals Mr. Copeland is an Advanced Practice Registered Nurse (R. 740), a nurse practitioner as discussed in the ALJ's decision.  (R. 24).
[4] Plaintiff calls her social worker Ms. McLay whereas the Commissioner calls her Ms. McKlay.  Exhibit B10F is identified as a Depression Questionnaire completed by Kerry McKlay and was presented to the ALJ by Plaintiff's attorney as a Medical Source Statement from Kerry McKlay.  (R. 709).  However, Ms. McLay signed and printed her name as Kerry McLay.  Id. 712.  Therefore, the court refers to her as Ms. McLay.

Astrue, 489 F.3d at 1084; Keyes-Zachary v. Astrue, 695 F.3d 1156, 1172 (10th Cir. 2012)).

Plaintiff's argument misunderstands the ALJ's responsibility with respect to evaluating medical opinions.  Plaintiff cites SSR 96-8p for the proposition that it is error for an ALJ to find a medical opinion persuasive without reconciling conflicts between the opinion and record evidence (at least later-provided evidence).  (Pl. Br. 8).  As Plaintiff suggests, SSR 96-8p provides a narrative discussion requirement that an ALJ must support his RFC assessment with specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion in his RFC, discuss how the claimant is able to perform sustained work activities, and describe the maximum amount of each work activity the claimant can perform.  1996 WL 374184, *7 (SSA July 2, 1996).  The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.  Id.  The narrative discussion must include consideration of a claimant's allegations of symptoms and consideration of medical opinions regarding the claimant's capabilities.  Id.  If the ALJ's RFC assessment conflicts with a medical source opinion, he must explain why he did not adopt the opinion.  Id.

The Ruling requires the ALJ to consider and address medical source opinions. The ALJ did so.  He considered and addressed the opinions of the state agency psychologists, Plaintiff's social worker, Ms. McLay, and her nurse-practitioner Mr. Copeland.  (R. 24).  He found the psychological consultants' opinions persuasive and Ms. McLay's and Mr. Copeland's opinions not persuasive, and he provided reasons for his findings, fulfilling the Ruling's requirement that he explain why he did not adopt

opinions that conflict with the RFC he assessed—Ms. McLay's and Mr. Copeland's opinions.  Plaintiff points to no requirement, and the court is aware of none, that an ALJ explain why (or explain that) a medical opinion is consistent with all record evidence.

Plaintiff is correct that the Ruling requires an ALJ to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  SSR 96-8p 1996 WL 374184, *7.  But the Ruling does not require the ALJ to resolve ambiguities or inconsistencies between a medical opinion and other record evidence.  As noted above, the ALJ explained his reasons for finding the psychological consultants' opinions persuasive.  (R. 24).  Moreover, the ALJ summarized and considered the evidence produced after the psychological consultants' opinions, found Ms. McLay's and Mr. Copeland's opinions not persuasive, and evaluated Plaintiff's allegations of symptoms, finding them "not entirely consistent with the medical evidence and other evidence in the record."  (R. 21).

What Plaintiff really appears to be arguing is that the ALJ erred in the RFC he assessed after finding the psychological consultants' opinions persuasive because Plaintiff alleges a material change in Plaintiff's condition after they opined and the ALJ did not adequately account for that alleged material change in condition.  The court disagrees.

The ALJ found Ms. McLay's opinion not persuasive because it "is not consistent with unremarkable mental status exams (Exhibit B14F/B19F), and [Plaintiff's] testimony that she is able to perform personal care, do household tasks and shop."  Id. at 24.  He found Mr. Copeland's opinion respecting moderate limitations is not persuasive because

Plaintiff's mental status exams have been unremarkable and she is "able to maintain a relationship with her boyfriend and family and shop in public" which are abilities consistent with mild rather than moderate limitations in social interaction.  (R. 24).  The ALJ's rationale is supported by the record evidence and although Plaintiff appeals to this opinion evidence, she does not show error in the ALJ's rationale.  Similarly, the ALJ found Plaintiff's allegations of symptoms not entirely consistent with the record evidence (R. 21) and Plaintiff appeals to her testimony without demonstrating error in the ALJ's discounting of that testimony.  Plaintiff has not shown a material worsening of her condition after the psychological consultants opined nor has she shown error in the ALJ's evaluation of the opinion evidence or of her allegations of symptoms.

### B.      Mild Limitations in Basic Work Activities vs. Semi-Skilled Work

Plaintiff points out that although the ALJ found her mental impairments are not severe, he found she has mild impairment in each of the four broad mental functional areas.  (Pl. Br. 13).  She recognizes the ALJ found no more than minimal limitation in her "ability to perform basic mental work activities" (R. 18), but argues this finding is "insufficient to explain how [her mild impairments] impacted her ability to return to past relevant semi-skilled work."  (Pl. Br. 14).  She points out the Program Operations Manual System (POMS) recognizes that often in semiskilled and skilled work "there is an **increasing requirement for understanding** and **memory** and for **concentration** and **persistence**, e.g.: the ability to: understand and remember detailed instructions, carry out detailed instructions, and set realistic goals or make plans independently of others." POMS DI 25020.010(B)(4)(b) (bold in POMS).  She points out semiskilled and skilled

work may require other special abilities "<u>depending upon the type of work and specific functions it involves</u>." <u>Id.</u> 25020.010(B)(4)(c) (emphasis added). She then claims the ALJ erred because he "provided no discussion of the impact of [Plaintiff]'s medically determinable mental impairments on her ability to work at any skill level, let alone semi-skilled work." (Pl. Br. 14) (citing <u>Richard De La T. v. Saul</u>, Civ. A. No. 20-1070-JWL, 2020 WL 6798771, at *3 (D. Kan. Nov. 19, 2020); <u>Leah A.D. v. Saul</u>, Civ. A. No. 19-1223-JWL, 2020 WL 2849475, at *5 (D. Kan. June 2, 2020)).

The Commissioner argues the ALJ's assessment of no mental impairments was "reasonable in light of evidence showing routine mental health treatment and largely normal mental status examination findings." (Comm'r Br. 7).

The court finds Plaintiff has shown no error in the ALJ's findings in this respect. It is true that semiskilled and skilled work often have greater mental requirements in understanding, memory, concentration, and persistence. And Plaintiff argues "the record shows that she is no longer able to engage in the mental requirements of such a skill level." (Pl. Br. 14). However, the past relevant work of which the ALJ found Plaintiff capable here, production clerk, has a Specific Vocational Preparation (SVP) level of 4, semiskilled work (R. 25), and Plaintiff does not point to a mental ability required by that work that she does not possess or to record evidence which demonstrates she does not possess that ability. Therefore, Plaintiff has not met her burden to show error in the ALJ's finding no specific mental limitations.

This court's decisions in <u>Richard De La T.</u> and <u>Leah A. D.</u> do not require a different conclusion. In <u>Leah A. D.</u>, the psychological consultant performing the initial

review, Dr. Brandhorst, found the claimant's mental impairments not severe, thereafter the claimant was sent for a consultative examination to Dr. Berg who opined she had mental limitations and, based on that examination, the psychological consultant performing the reconsideration review, Dr. Adams, found her mental impairments severe. 2020 WL 2849475, at *2. The ALJ discounted the opinions of Dr. Berg and Dr. Adams and accorded significant weight to the opinion of Dr. Brandhorst. Id. The ALJ found the claimant's mental impairments not severe and assessed no mental impairments, finding she was able to perform her past relevant work as a chief financial officer with an SVP of 8, the highest SVP level. Id. at *4. The court noted that in discounting Dr. Berg's opinion the ALJ found inconsistencies between the opinion and the record evidence:

> For instance, during the examiner's interview [ ] the claimant was cooperative, pleasant, rather outgoing, and spontaneous although she needed simple instructions repeated on occasion, displayed limited delayed recall, and a borderline immediate memory for complex information.

Id. at *6 (citing the ALJ's decision). The court found the ALJ did "not explain the inconsistency between being cooperative, pleasant, rather outgoing, and spontaneous, and needing simple instructions repeated on occasion, displaying limited delayed recall, and a borderline immediate memory for complex information," did "not specifically reject the findings regarding simple instructions, limited recall, or complex information," and did not "explain how they would affect [the claimant's] performance of the job of a CFO." Id.

It is important to note that Leah A. D. was decided under the prior regulations wherein medical opinions were to be weighed under the treating physician rule and an

examining physician's opinion (Dr. Berg's) was generally given greater weight than the opinion of a physician who had only reviewed the evidence (Dr. Brandhorst) except where the ALJ provided rationale supported by record evidence to accord greater weight to the reviewing physician's opinion. This court in Leah A. D. found that justification was lacking, thereby questioning the ALJ's assessment of no mental limitations. Moreover, the past relevant work in that case required the highest skill level (SVP 8) whereas the semiskilled past relevant work here is SVP 4 work.

Although Richard De La T. was decided pursuant to the regulations applicable here, the same result obtains. In that case, the claimant's past relevant work was skilled work as a parts manager with an SVP of 7, the second highest skill level. 2020 WL 6798771, at *2-3. Again, the semiskilled past relevant work at issue here has an SVP of 4. Moreover, Plaintiff points to no mental abilities required by that work of which she is incapable and cites no record evidence compelling that result. She has shown no error requiring remand of this case.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 6, 2023, at Kansas City, Kansas.




s:/  John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**